UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| KATHLEEN O'CONNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:24-cv-00376-SDN |
| | ) |
| LIAM HUGHES, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Kathleen O'Connell brings this suit against the Maine Department of Agriculture, Conservation, and Forestry Animal Welfare Program ("AWP"), four AWP employees, as well as Lillian Bagley and Heidi Jordan as alleged affiliates of the AWP. The essence of O'Connell's complaint is that the AWP violated O'Connell's constitutional rights when it seized animals from her residence. All Defendants have filed Motions to Dismiss O'Connell's complaint (ECF Nos. 20, 21, 22, 24, 28). For the reasons that follow, I grant Defendants' Motions.

**Background and Procedural History**

Kathleen O'Connell resides in Wales, Maine. Pl.'s Compl. ¶ 1. On November 5, 2019, Angela Rogers, a District Humane Agent for the AWP, served O'Connell with a search and seizure warrant for O'Connell's Wales residence, along with a civil summons for cruelty to animals. *Id.* ¶ 14. The AWP executed the search and seized 82 cats from O'Connell's residence. *Id.*; Ex. 1, Def. Roger's Mot. to Dismiss. On September 25, 2020, the Maine District Court dismissed the matter for lack of merit and ordered the AWP to return the cats to O'Connell. Ex. 1, Def. Roger's Mot. to Dismiss.

On May 28, 2021, the AWP served O'Connell with another summons, but the AWP withdrew this complaint after one day in court. Pl.'s Compl. ¶ 16. On June 7, 2021, O'Connell filed a motion to enforce the District Court's order of dismissal, arguing that the AWP failed to return 18 of her cats. Ex. 3 at 2, Def. Roger's Mot. to Dismiss. In response, the AWP argued that it withheld nine of the cats for their health and safety and that it had already returned the remaining nine cats to O'Connell. *Id.*; Pl.'s Compl. ¶¶ 15, 17.

The AWP performed another search of O'Connell's home on January 8, 2022, resulting in the seizure of 111 cats—33 of which were deceased—and 26 poultry. Pl.'s Compl. ¶ 17; Ex. 2 at 1, Def. Roger's Mot. to Dismiss. At this time, O'Connell had recently returned home from an eight day stay at the hospital and was still recovering from COVID-19 as well as grieving for the loss of her best friend and her father who had both contracted and died from COVID-19. Pl.'s Compl. ¶ 17. O'Connell had arranged for a family friend to care for the cats while she was at the hospital, and the alleged 33 cats' deaths happened under the family friend's care. *Id.* While in the hospital, O'Connell had also lost her job and began facing financial troubles. *Id.*

The District Court held a consolidated hearing to address the AWP's Application for Possession with respect to the cats the AWP seized from O'Connell's residence and O'Connell's motion to enforce the court's previous order of dismissal. Pl.'s Compl. ¶ 18; Ex. 2 at 2, Def. Roger's Mot. to Dismiss. The District Court issued two orders: one granting the AWP's Application for Possession, resulting in the forfeiture of the animals seized on January 8, 2022, and another granting O'Connell's motion to enforce with respect to nine identified cats the District Court had ordered previously that the AWP

return to O'Connell on September 25, 2020.[1] Pl.'s Compl. ¶ 18; Ex. 2 at 4, Def. Roger's Mot. to Dismiss; Ex. 6 at 4, Def. Roger's Mot. to Dismiss. The AWP returned two of the nine cats to O'Connell and disregarded O'Connell's subsequent report of missing cats. Pl.'s Compl. ¶ 18.

O'Connell appealed to the Maine Superior Court both the District Court's decision granting possession of the animals to the AWP and decision that the AWP had failed to return nine of the alleged 18 cats to O'Connell. *Id.*; Ex. 3 at 1, Def. Roger's Mot. to Dismiss. The Superior Court affirmed the District Court's decisions, finding the District Court did not abuse its discretion or err in admitting certain pieces of evidence that the AWP presented against O'Connell, and the Superior Court rejected O'Connell's constitutional challenges to the seizure of her cats and constitutional challenge to the 17 M.R.S. § 1021 provision. *Id.* at 12.

O'Connell then appealed the Superior Court decision to the Law Court—Maine's Supreme Judicial Court. Pl.'s Compl. ¶ 18; Ex. 4 at 7, Def. Roger's Mot. to Dismiss. The Law Court affirmed the District Court's decision and found no error or abuse of discretion with respect to its "factual findings, legal conclusions, or discretionary determinations"—which included the constitutional challenges O'Connell had raised to the Superior Court. Nor did the Law Court find any obvious error as to the constitutional issues O'Connell had raised for the first time in her appeal to the Law Court. Ex. 5, Def. Roger's Mot. to Dismiss.

On November 5, 2024, O'Connell filed with this Court a complaint asserting six claims—three pursuant to 42 U.S.C § 1983, one pursuant to the Maine State

---

[1] The Maine District court found credible the AWP's witness testimony that the AWP had already returned nine of the alleged eighteen remaining cats. Ex. 6 at 2 ¶ 7, Def. Roger's Mot. to Dismiss.

Constitution, and two challenges to the constitutionality of 17 M.R.S. §§ 353–355 and 17 M.R.S. § 1031. O'Connell named as defendants the AWP, AWP employees, and persons associated with fostering the animals that were seized from O'Connell's residence. Essentially, O'Connell is seeking redress against the AWP for its two searches of O'Connell's residence and seizures of her animals.

## Legal Standard

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). Similarly, "[w]hen a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010). A court may also consider "implications from documents incorporated into the complaint[] and concessions in the complainant's response to the motion to dismiss." *Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez-Reyes*, 711 F.3d at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). To assess a complaint's adequacy, courts apply a "two-pronged approach." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-

4

pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Sepúlveda–Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When faced with a motion to dismiss based on multiple grounds, "the First Circuit advises lower courts to consider jurisdictional arguments first." *Justin v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 20-cv-00164, 2020 WL 4677294, at *1 n.1 (D. Me. Aug. 12, 2020); *see Ne. Erectors Ass'n of BTEA v. Sec'y of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37, 39 (1st Cir. 1995) ("When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first.").

**Discussion**

All Defendants in this matter assert that O'Connell's claims are barred by the *Rooker-Feldman* doctrine. O'Connell does not provide an argument contesting specifically the application of *Rooker-Feldman* here. The United States Supreme Court has exclusive jurisdiction over appeals of "final judgments or decrees rendered by the highest court of a States in which a decision could be had . . . ." 28 U.S.C. § 1257; *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005). The *Rooker-Feldman* doctrine precludes "parties who lost in state court from 'seeking review and rejection of that judgment' in federal court." *Puerto Ricans for P.R. Party v.*

*Dalmau*, 544 F.3d 58, 68 (1st Cir. 2008) (quoting *Exxon Mobil*, 544 U.S. at 284). Accordingly, lower federal courts are without authorization to review state court judgments; such review is only within the authority of the Supreme Court. *See Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018).

The *Rooker-Feldman* doctrine "forecloses district court jurisdiction of claims that are 'inextricably intertwined' with the claims adjudicated in a state court." *Hill v. Town of Conway,* 193 F.3d 33, 39 (1st Cir. 1999) (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983)). "A federal claim is inextricably intertwined with the state-court claims if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Sheehan v. Marr*, 207 F.3d 35, 40 (1st Cir. 2000) (quotation modified). The *Rooker-Feldman* doctrine precludes jurisdiction here if (1) O'Connell lost in a state-court judgment that (2) was rendered before the federal action commenced, where (3) O'Connell complains of injuries caused by the state-court judgment and (4) invites district court review and rejection of those judgments. *See Donovan v. Fowle*, 762 F. Supp. 2d 186, 196–97 (D. Me. 2011); *DuLaurence v. Telegen*, 94 F. Supp. 3d 73, 79 (D. Mass. 2015), *aff'd*, No. 15-1537, 2016 WL 10454553 (1st Cir. 2016). The doctrine applies "where, regardless of how the claim is phrased, 'the only real injury to [the plaintiff] is ultimately still caused by a state-court judgment.'" *Silva v. Massachusetts*, 351 F. App'x 450, 455 (1st Cir. 2009) (quoting *Davison v. Gov't of P.R.– P.R. Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir.2006)). A plaintiff's claims are not barred by the *Rooker-Feldman* doctrine if their complaint "alleges a constitutional violation by an adverse party" that is "independent of the injury caused by the state court judgment." *Davison*, 471 F.3d at 222.

Here, there is no dispute that O'Connell lost at the District Court, Superior Court, and Law Court. There also is no dispute that the state courts rendered their decisions before O'Connell filed her complaint with this Court. Thus, this complaint meets the first and second prongs of *Rooker-Feldman*. I turn to assess whether O'Connell's complaint raises injuries caused by the state court decisions and if O'Connell is inviting this Court to review those decisions.

The factual allegations in this complaint align closely with those O'Connell raised in her appeals in state court. Although the claims before this court are characterized as claims pursuant to § 1983, O'Connell is again seeking redress against the AWP for the search of her residence and seizure of her animals—that which has already been reviewed by every level of the Maine state courts. *Silva*, 351 F. App'x at 455 ("These alleged injuries stem directly from the judgment entered in the state . . . action . . . ."). For instance, in the "Relief" section of her complaint, O'Connell asks this Court to order the AWP to return all animals that it seized from O'Connell's residence. *See* Pl.'s Compl. at 27 ¶ 7. The Maine District Court has already determined that O'Connell's evidence of the alleged nine missing cats is insufficient to prove the AWP did not return those cats. Moreover, O'Connell references her appeals to the Superior Court and Law Court, stating that she attempted to seek relief from the AWP's seizure of her animals but failed. *See* Pl.'s Compl. ¶ 18.

O'Connell's recharacterization of the claims as invoking § 1983 does not defeat the application of *Rooker-Feldman* here because any finding in her favor would alter the final decisions of the Maine state courts. *See Silva*, 351 F. App'x at 456 ("This bar applies notwithstanding that the [plaintiffs] are asserting in their federal action a federal constitutional claim pursuant to 42 U.S.C. § 1983."). "Application of the *Rooker-*

7

*Feldman* doctrine is not contingent upon an identity between the issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit, but rather turns on whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Hartlett v. Maine*, No. 22-CV-00185, 2022 WL 2800909 (D. Me. July 18, 2022) (quoting *Klimowicz*, 907 F.3d at 64–65) (quotation modified), *R&R adopted*, 2022 WL 3357490 (Aug. 15, 2022). Any relief sought by O'Connell in the complaint here would result in the invalidation of the Maine state courts' decisions that ordered and affirmed the AWP's seizure of her animals. In other words, any judgment in this case would result in the appellate-type review of the state court decisions that the Supreme Court has explained is not within the authority of a federal district court. *E.g.*, *Heck v. Humphrey*, 512 U.S. 477 (1994) (holding a plaintiff could not assert a claim pursuant to § 1983 because any judgment in the plaintiff's favor would invalidate the state court's decision).

The Supreme Court does not prohibit federal courts from reviewing independent claims that are separate from the state court decisions. *Exxon Mobil*, 544 U.S. at 293 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which they were a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." (quotation modified)). However, O'Connell's claims in the complaint here are not independent from the Maine state court judgments as she does not seek any relief that would leave in effect those adjudications made by the state courts. Instead, any decision against Defendants in this matter would essentially overturn the state courts' prior judgments finding the District Court's order of forfeiture valid. Thus, O'Connell does not meet the requirement for asserting an independent claim that would

8

cut against the application of *Rooker-Feldman* in this matter. *Cf. id.* (finding *Rooker-Feldman* did not apply where the plaintiff "plainly has not repaired to federal court to undo the [state] judgment in its favor."). O'Connell's claims are "directly and inextricably tied to the state court judgments themselves." *DuLaurence*, 94 F. Supp. 3d at 80. Accordingly, this Court lacks jurisdiction, and I must grant Defendants' Motions to Dismiss and need not reach the remaining arguments.

## CONCLUSION

For the foregoing reasons, I **GRANT** the Defendants' Motions to Dismiss (ECF Nos. 20, 21, 22, 24, 28).

**SO ORDERED.**

Dated this 4th day of August, 2025.

/s/ Stacey D Neumann
**U.S. DISTRICT JUDGE**